*10-cv-940*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

### FORM FOR USE IN APPLICATIONS FOR HABEAS CORPUS UNDER 28 U.S.C. § 2254
(eff. 12/1/04)

Ricky Whitney _____ PETITIONER

(Full Name)    (Include name under which you were convicted)

vs.             Case No._____

(Supplied by the Court)

Warden Curley            . _____ RESPONDENT

(Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner)

and

THE DISTRICT ATTORNEY OF THE COUNTY OF ___ Adams ___

and

THE ATTORNEY GENERAL OF THE STATE OF ___ PA ___

ADDITIONAL RESPONDENT

Ricky Whitney            354343

Name                     Prison Number

Muskegon Cor. Fac. 2400 S. Sheridan Dr. Muskegon, MI 49442

Place of Confinement

(If petitioner is attacking a judgment which imposed a sentence to be served in the future, petitioner must fill in the name of the state where the judgment was entered. If petitioner has a sentence to be served in the future under a federal judgment which he wishes to attack, he should file a motion under 28 U.S.C. § 2255, in the federal court which entered the judgment.)

### PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### INSTRUCTIONS–READ CAREFULLY

1. You must include all potential claims and supporting facts for which you might desire to seek review because a second or successive habeas corpus petition cannot be filed except under very specific and rare circumstances requiring certification by the Third Circuit Court of Appeals as set forth in instruction # 13.

2. Your habeas corpus petition must be filed within the 1-year statute of limitations time limit set forth in 28 U.S.C. §2244(d)(1). (There are limited circumstances in which the petition may be amended, within the one-year time period, to add additional claims or facts. See Federal Rules of

1

FILED
SCRANTON

MAY 03 2010

PER _____
DEPUTY CLERK

**PETITION**

1. (a) Name and location of court which entered the judgment of conviction under attack:_____

Court of Common Pleas Adams County, Gettysburg, PA 17325

   (b) Name of Prosecutor: Mr. George

   (c) Prosecution conducted by District Attorney's Office of Adams
       County

2. (a) Date of Judgment of conviction: Convicted 14 Aug. 1998 Sentenced 13 Oct. 1998
   Resentenced 1 Dec 2006

   (b) Indictment number or numbers:_____

   Term: 1997 _____ Criminal Case Number: CR 789-1997

3. Length of sentence: 30-72 yr    Sentencing Judge: Spicer

4. Nature of offense or offenses for which you were convicted: Att. Homicide,
Agg. Assault, REAP, Criminal Mischief, simple Assault

_____

5. What was your plea? (Check one)
   (a) Not guilty (X)   (b) Guilty ( )   (c) Nolo contendere ( )

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   indictment, give details:_____

   _____

   _____

6. **If you pleaded not guilty**, what kind of trial?: (Check one)   (a) Jury (X)    (b) Judge only ( )

7. Did you testify at the trial?  Yes (X)  No ( )

8. Did you appeal from the judgment of conviction?   Yes (X)  No ( )

9. If you did appeal, answer the following:

4

(a) Name of court: _Superior Court of PA_

(b) Result: _Denied_

(c) Date of result and citation, if known: _4 Oct. 1999  00527 MDA 99_

(d) Grounds raised: _See Exhibit A    9(d)_

_____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:
    (1) Name of court: _Supreme Court of PA_

    (2) Result: _Denied_

    (3) Date of result and citation, if known: _8 Mar. 2005    705 MAL 2004_

    (4) Grounds raised: _See Exhibit A  9(e)(4)_

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

    (1) Name of court: _NA_

    (2) Result: _____

    (3) Date of result and citation, if known: _____

    (4) Grounds raised: _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?    Yes (X)  No ( )

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of Court: _Court of Common Pleas Adams Co._

    (2) Nature of proceeding: _PCRA_

_____

## Issues Presented

9 (d) Was trial counsel ineffective for failing to move foe
a change of venue considering the highly publicized
nature of the case and the small population Adams
County?

Was trial counsel ineffective for failing to object
when sequestered witness spoke to each other during the
trial about testimony?

Was there sufficient evidence to find the defendant
guilty of the charges of attempted homicide and
aggravated assault?

Was defense counsel ineffective for failing to have
psychiatric examination performed on defendant in
diminished capacity or mentally ill defense?

Was counsel ineffective for failing to file a motion
to suppress defendant's statement?


9 (e) (4) Counsel was ineffective for failing to have a
psychiatric exam performed on defendant in
support of defense used at trial.
— Counsel was ineffective for failing to file
a motion to suppress statements defendant made
to police officers.

Exhibit A          9 (d)

(3) Grounds raised: _____See Exhibit A  II (a)(3)_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes (X)  No ( )  State Claimed several issues were previously
Litigated
(5) Result: _Denied other Than resenTencing_____

(6) Date of result: _Oct. 20 2006, Dec. 1 2006_____

(7) Did you appeal the result to a higher court?    Yes (X)  No ( )
Superior CT
Court Name(s) _Supreme CT_____

Denied
Result(s) _Denied_____

Dec. 2, 2008
Result Date(s) _mar. 9, 2010_____

(b) As to any second petition, application or motion give the same information:

(1) Name of Court: _____N A_____

(2) Nature of proceeding:_____

_____

(3) Grounds raised: _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )  No ( )

(5) Result:_____N A_____

_____

_____

6

Rick Whitney
354343
Muskegon Correctional Facility
2400 S. Sheridan Rd.
Muskegon, MI 49442-6298

United States District Court
Middle District of Pennsylvania
P.O. Box 1148
235 North Washington Avenue
Scranton, PA 18501

Dear Clerk of the Court:

Please find enclosed a Pro Se petition for Writ of Habeas
Corpus under 28 U.S.C. §2254, with a Concise Memorandum of Law as
required under Local Rule 83:32(C) with attached exhibits.

Please note that I attempted to follow the instructions on the
form to the best of my ability. I am not trained in the law and
ask that I be appointed an attorney. I have recently been shipped
to Michigan due to the overcrowding in the PA prison system.
Unfortunately the law library here is not complete. See attached
Memo from our Warden. I ask that the attorney be allowed to amend
this petition after review of the files. I ask permission to
proceed in forma pauperis and have included a copy of a verified
statement on in forma pauperis, filed on 3/2/09. I also enclosed a
certified account statement from Michigan. My financial condition
is worse now because my prison pay is far lower.

If this pro se Petition is lacking in some manner, please do
not reject it, without giving me a chance to correct the error.

I thank you in advance for your attention to the within.

Sincerely,

Rick Whitney



STATE OF MICHIGAN
DEPARTMENT OF CORRECTIONS
LANSING

JENNIFER M. GRANHOLM
GOVERNOR

PATRICIA L. CARUSO
DIRECTOR

# NOTICE TO PRISONERS
## Law Library Materials

Confinement in the receiving state will not deprive any inmate of the sending state of any legal right which he would have if confined in the sending state.

All prisoners under the jurisdiction of the Pennsylvania Department of Corrections (PDOC) who are transferred to the Muskegon Correctional Facility (MCF) pursuant to the Interstate Corrections Compact will have access to an electronic law library collection of legal publications provided by the PDOC while you are housed at MCF. You will also have available to you legal publications from the Michigan Department Corrections' mandatory law library collection through the MCF law library or through loans from other libraries.

Michigan shall provide and support desktop IT equipment to be used by Pennsylvania inmates for the purpose of accessing Pennsylvania law library material. Pennsylvania will procure and retain ownership of the application software license and/or online subscriptions for the law library applications and make them available for use at Muskegon.

Unfortunately due to technical difficulties ***and*** the delay in receiving hard bound copies of legal reference materials from the vendor the PDOC electronic law library collection as of the ***date of this notice*** is still not available. We are working diligently on getting this up and running and will notify the prisoner population as soon as it is available.

If you have been unable to conduct necessary research to meet filing or other deadlines as result of the unavailability of these legal research materials, it is recommended that you write the court and advise them on the reasons for the delay. You may also advise the court to contact the facility as identified below if there are questions concerning the availability of appropriate legal research materials.

Contact Person:    Delores Crosby, Administrative Assistant
Muskegon Correctional Facility
2400 S. Sheridan Drive
Muskegon, MI 49442
(231) 773-3201, ext. 233

Copies of this Notice will be available for prisoner use in the law library.

As a reminder, to be placed on general or law library callouts, you can pick up the library callout request form in your housing unit. Complete the form and drop the form in the **CALLOUT REQUEST BOX** at the entrance to the Dining Hall. The forms will be picked up daily at 7:30am and entered for you to report for the next library day callout. **Library callouts are mandatory.** If you want repeat callouts to the library you must see the Librarian to be placed on repeat callouts. **Remember, a pass/callout is mandatory to go to the library.**

Michael W. Curley, Warden          Date

3/19/10

11 (a) (3) **1** Coun**sel** was ineffective for failing to object to improper 5 to 10 year sentences for counts 13 to 20.

2 **Counsel** was ineffective for failing to object to incorrect jury instruction for aggravated assault.

3 **Counsel** was ineffective for failing to object to prosecutors improper closing arguments.

4 **Counsel** was ineffective for failure to file timely motion for suppression of all statements taken from defendant that were involuntarily made, the product of police overreaching and obtained without a valid waiver of miranda rights.

5 Attorney Mackin was ineffective in presenting testimony on defendant's invocation of his rights to remain silence and rights to cou**nsel** and statements made following such invocations and for failing to request any limiting instruction on such invocations and failing to request an instruction telling the jury statements taken in violation of miranda are involuntary.

6 **Counsel** was ineffective for failing to object to the introduction of ballistics and other evidence and speculative testimony there on indicating directly and/or circumstantially an intent to shoot or kill where evidence was disposed of making it unavailable for examination by the defense.

7 **Counsel**s were ineffective in failing to investigate available medical records which corroborated the defense at trial and the government's possession of such documents which did not provide a discovery.

8 **Counsels** were ineffective in failing to have the defendant evaluated by a psychiatrist on his history of depression, suicidal thoughts and **his** mental state at the time of the incident at issue, in order to determine whether psychiatric evidence was available at trial in corroboration on defense pursued at trial or for mitagation at sentencing.

Exhibit A    11 (a) (3)

9 **Counsels**: were ineffective in failing to interview any eyewitnesses when such witnesses were aviable and willing to testify that the police taunted, provoked and baited defendant and escalated the incident at issue.

The state claimed several of these issues were previously litigated.

Exhibit A     11 (a) (3) continued

(6)  Date of result:___NA_____

(7)  Did you appeal the result to a higher court?    Yes ( )  No ( )

Court Name(s)_____NA_____

Result(s)_____

Result Date(s)_____

(c) As to any <u>third petition</u>, application or motion give the same information:

(1) Name of Court: ____NA_____

(2) Nature of proceeding:___NA_____

_____

(3)  Grounds raised: ____NA_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ( )  No ( )

(5)  Result:___NA_____

_____

_____

(6)  Date of result:___NA_____

(7) Did you appeal the result to a higher court?    Yes ( )  No ( )

Court Name(s)_____

Result(s)_____

Result Date(s)_____

7

   (d) If you did *not* appeal from the adverse action on any petition, application or motion,
        explain briefly why you did not:

N A
_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Give
specific facts supporting each ground.

   *CAUTION*: In order to proceed in the federal court, you must ordinarily first exhaust your available
state court remedies, you should set them forth in this petition if you wish to seek federal relief. If
you fail to set forth all such grounds in this petition, you may be barred from presenting them at a
later date.
   For information, the following is a list of the most frequently raised grounds for relief in habeas
corpus proceedings.  Each statement preceded by a letter constitutes a separate ground for possible
relief.  You may raise any grounds which you may have other than those listed if you have exhausted
all your state court remedies with respect to them.  However, *you should raise in this petition all
available grounds* (relating to this conviction) on which you base your allegations that you are being
held in custody unlawfully.
   Do not check any of these listed grounds.  If you select one or more of these grounds for relief,
you must allege facts.  The petition will be returned to you if you merely check (a) through (j) or any
one of these grounds.

   (a)  Conviction obtained by plea of guilty which was unlawfully induced or not made
        voluntarily with understanding of the nature of the charge and the consequences of the
        plea.
   (b)  Conviction obtained by use of coerced confession.
   (c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search
        and seizure, (where the state has not provided a full and fair hearing on the merits of
        the Fourth Amendment claim).
   (d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest,
        (where the state has not provided a full and fair hearing on the merits of the Fourth
        Amendment claim).
   (e)  Conviction obtained by a violation of the privilege against self-incrimination.
   (f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to
        the defendant evidence favorable to the defendant.
   (g)  Conviction obtained by a violation of the protection against double jeopardy.
   (h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally
        selected and impaneled.
   (i)  Denial of effective assistance of counsel.
   (j)  Denial of right of appeal.

8

A. Ground one: Counsel was ineffective for failing to file a motion

suppress defendant's statement.

Supporting FACTS (state *briefly* without citing cases or law):

See attached Concise Memorandum in support of Habeas Corpus

relief

B. Ground two: Appellate Counsel was ineffective in failing to argue that trial counsel was ineffective for eliciting and failing to object to the prosecutor eliciting, testimony on invocations of Defendant's rights and for failing to move for jury instructions on the permissible use of such evidence.

Supporting FACTS (state *briefly* without citing cases or law):

See attached Memorandum

C. Ground three: Defense Counsel was ineffective for failing to investigate

having a psychiatric examination performed on defendant.

Supporting FACTS (state *briefly* without citing cases or law):

See attached Memorandum

D. Ground four: Petitioner reserves the right to Amend after

Appointment of counsel.

Supporting FACTS (state *briefly* without citing cases or law):

9

_____

_____

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state **briefly** what grounds were not so presented, and give your reasons for not presenting them:

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?    Yes ( ) No (X)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

   (a) At preliminary hearing: _Jeff Cock    Public Defenders Office_
   _____ Gettysburg, PA ___

   (b) At arraignment and plea: _Jeff Cock        "            "___
   _____

   (c) At trial: _Charles Mackin    Address Unknown___
   _____

   (d) At sentencing: _Charles Mackin      "          "___
   _____

   (e) On appeal: _Albert Nelthrop      Allentown, PA___
   _____

   (f) In any post-conviction proceeding: _Ross Pifer , Steve Rice___
   _Address Unknown   Gettysburg, PA_

10

(g)  On appeal from any adverse ruling in a post-conviction proceeding :_____

_____Ross Pifer_____Steve Rice_____

_____Address Unknown_____Gettysburg, PA_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes (X)   No ( )

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?                Yes ( )   No (X)

(a)  If so, give name and location of court which imposed sentence to be served in the future:

_____

_____

(b)  And give date and length of  sentence to be served in the future: _____

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?    Yes ( )   No ( )

I declare under penalty of perjury that the foregoing is true and correct.

Executed on_____22 Apl 2010_____       _____Rick Whitin_____
                    Date                                  Petitioner's Signature or
                                               Signature of Petitioner's Representative

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

11

Affidavit Accompanying Motion for Permission to Proceed in the District Court and/or on Appeal in Forma Pauperis in Habeas Corpus Cases under 28 U.S.C. Sections 2241 and 2254.

United States District Court for the *Middle* District of Pennsylvania

*Ricky Whitney*
(Plaintiff)

V.

*Warden Curley*
(Defendant(s))

District Court Case No._____

---

Affidavit in Support of Motion

I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.)

Signed :_____
Petitioner or Petitioner's Representative

**Instructions**
**Complete all questions in the application and then sign it. Do not leave any blanks. If the answer to a question is "O," "none," or "not applicable" ("N/A"), write in that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number.**

**Date:** *22 Apl 2010*

---

12

My issues are: Denial of effective assistance of Counsel due To: failure To investigaTe, failure To file suppression, failure to request proper jury instructions or objecT To invocaTions of righTs being used against peTiTioner.

1. For both you and your spouse, estimate the average amount of money received from each of the following sources during the past twelve (12) months. Adjust any amount that was received weekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.

| Income Source | Average Monthly amount during the past 12 months | Amount expected Next Month |
|---|---|---|
| Employment | $ 65.00 | $ 15.00 |
| Self-employment | $ 0 | $ 0 |
| Income from real property (such as rental income) | $ 0 | $ 0 |
| Interest and Dividends | $ 0 | $ 0 |
| Gifts | $ 0 | $ 0 |
| Alimony | $ 0 | $ 0 |
| Child Support | $ 0 | $ 0 |
| Retirement (such as social security, pension, annuities, insurance) | $ 0 | $ 0 |
| Disability (such as social security, insurance payment) | $ 0 | $ 0 |
| Unemployment payments | $ 0 | $ 0 |
| Public Assistance (such as Welfare) | $ 0 | $ 0 |
| Other (specify): | $ 0 | $ 0 |
| Total Monthly Income: | $ 65.00 | $ 15.00 |

13

2. List your employment history, most recent employer first. (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross Monthly Pay |
|---|---|---|---|
| Prisoner pay | P.O. Box 1000 Houtzdale, PA 16698 | 2000-2010 | $65.00 |
| | | | |
| | | | |

3. List your spouse's employment history, most recent employer first. (Gross monthly pay is before taxes or other deductions.)

| Employer | Address | Dates of Employment | Gross Monthly Pay |
|---|---|---|---|
| N A | | | |
| | | | |
| | | | |

4. How much cash do you and your spouse have? $ _____ O _____

Below, state any money you or your spouse have in bank accounts or in any other financial institution.

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| O | | O | O |
| | | O | O |
| | | O | O |

If you are a prisoner, you must attach a statement *certified by the appropriate institutional officer* showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.

5. List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.

14

Home(Value)               Other estate   Real(Value)

_____NA_____          _____NA_____

_____          _____

_____          _____


Motor Vehicle # 1

Value             _____NA_____

Make & Year       _____

Model             _____

Registration #:   _____


Motor Vehicle # 2

Value             _____NA_____

Make & Year       _____

Model             _____

Registration #:   _____


Other Assets              Value of other assets

_____O_____          _____

_____          _____

_____          _____


6. State every person, business, or organization owing you or your spouse money, and the amount owed.

| Person owing you or your Spouse money | Amount owed to you | Amount owed to your Spouse |
|---|---|---|
| None | O | NA |
| | | |
| | | |

7. State the persons who rely on you or your spouse for support.

| Name | Relationship | Age |
|------|--------------|-----|
| NONE | | |
| | | |
| | | |

8. Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.

|  | You | Your Spouse |
|--|-----|-------------|
| Rent or home mortgage payment (include lot rented for mobile home) | $ 0 | $ NA |
| Are real estate taxes included? | Yes NA | No NA |
| Is property insurance included? | Yes NA | No NA |
| Utilities (electricity, heating fuel, water, sewer and telephone) | $ 0 | $ |
| Home maintenance (repairs and upkeep) | $ 0 | $ |
| Food | $ 30.00 | $ |
| Clothing | $ 0 | $ |
| Laundry & Dry-Cleaning | $ 0 | $ |
| Medical and dental expenses | $ 0 | $ |
| Transportation (not including motor vehicle payments) | $ 0 | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ 0 | $ |
| Insurance (not deducted from wages or included in Mortgage payments) | $ 0 | $ |
| Homeowner's or Renter's | $ 0 | $ |
| Life | $ 0 | $ |
| Health | $ 0 | $ NA |

16

| | | | |
|---|---|---|---|
| Motor Vehicle | $ _____ 0 _____ | $ _____ N A _____ |
| Other:_____ | $ _____ 0 _____ | $ _____ |
| Taxes (not deducted from wages or included in Mortgage payments) (specify):_____ | $ _____ 0 _____ | $ _____ |
| Installment payments | $ 20 % of any income | $ _____ |
| Motor Vehicle | $ _____ 0 _____ | $ _____ |
| Credit Card (name):_____ | $ _____ 0 _____ | $ _____ |
| Department Store (name):_____ | $ _____ 0 _____ | $ _____ |
| Other:_____ | $ _____ 0 _____ | $ _____ |
| Alimony, maintenance, and support paid to others | $ _____ 0 _____ | $ _____ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ _____ 0 _____ | $ _____ |
| TOTAL MONTHLY EXPENSES | $ 30 + 20 % of income | $ _____ N A _____ |

9. Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?    *NO*

Yes ( )   No (X) If yes, describe on an attached sheet.

10.  Have you paid or will you be paying an attorney any money for services in connection with this case, including the completion of this form?    Yes ( ) No (X)

If yes, state the attorney's name, address, and telephone number:

_____

_____

_____

11.  Have you paid - or will you be paying- anyone other than an attorney (such as a paralegal or typist) any money for services in connection with this case, including the completion of this form? Yes_____   No _X_

If yes, how much?          $_____0_____

If yes, state the person's name, address, and telephone number:

_____

_____

_____

12. Provide any other information that will help explain why you cannot pay the docket fees for your appeal.   *I'm an indigent prisoner recently shipped to*

*Michigan due to overcrouding in PA.*

_____

13. State the address of your legal residence.   *Muskegon Corr. Fac.*

_____ *2400 S. Sheridan Drive*

_____ *Muskegon, MI 49442*

Your daytime phone number: _____

Your age: ___52___          Your years of schooling: ___12___

Your Social Security number: _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_

I declare under the penalty of perjury that the foregoing is true and correct:

_____ *Rick Whaley* _____
(Petitioner's Signature or Signature of Petitioner's Representative)

Executed on _22 Apl 2010_
(DATE)

18

**FEDERAL COURT - CIVIL ACTION**

| Prisoner-Plaintiff/Petitioner/Appellant name and number | | Defendant's/Respondent's/Appelee's name |
|---|---|---|
| RICKY DEAN WHITNEY #354343 4-255B<br><br>0 | V | WARDEN CURLEY |

## CERTIFICATE OF PRISONER INSTITUTIONAL/TRUST FUND ACCOUNT ACTIVITY

I am employed by the Michigan Department of Corrections at the facility identified below, at which the prisoner identified as the Plaintiff/Petitioner/Appellant is currently incarcerated.

Attached is a computer printout which accurately reflects the current spendable balance and all activity within this prisoner's account during the preceding six months or, if the prisoner has been incarcerated for less than six months, for the period of incarceration. "Credit" on the printout represents a withdrawal from the account and "Debit" represents a deposit to the account.

This Certificate of Prisoner Account Activity reflects, for the reported period, an average monthly deposit (i.e., total deposits divided by number of months) _____$0.00 , an average monthly balance (i.e., total deposits less total withdrawals divided by number of months) of ____($23.64)____ .

There is a current spendable account balance of ____$93.79 .

Date:    04/20/10

Signature of Custodian of Prisoner Institutional/Trust Fund Account

MUSKEGON CORRECTIONAL FACILITY

Date: 04/20/2010 12:45:28

# Michigan Department Of Corrections
## Trust Account Statement
### For the period 10/20/2009 to 04/20/2010

Page 1 of 1

| | | | Current | |
|---|---|---|---|---|
| MDOC Nbr.: 354343 | Name: WHITNEY, RICKY DEAN | | Lock Loc.: 4-255B | |
| Birth Date: 10/05/1957 | Location: MUSKEGON CORRECTIONAL | Jurisdiction Dates: 03/03/2010 | | Active: Yes |
| Current Balance: 93.79 | Hold Balance: .00 | Account Dates: 03/04/2010 | | A/C. Status: Active |

## Sub Account Details

| Account Code | Account Name | Balance As of 10/20/2009 | Balance As of 04/20/2010 |
|---|---|---|---|
| **Trust-Muskegon Facility Caseload** | | | |
| 2101 | Offender Funds | 0.00 | 93.79 |
| 2198 | Freeze | 0.00 | 0.00 |

## Debts & Obligations

| Deduction Type | | Information No. | Effective Date | Original Amount | Amount Paid | Amount Owed |
|---|---|---|---|---|---|---|
| **Trust-Muskegon Facility Caseload** | | | | | | |
| FFCO | Fines, Fees and Costs Obligation | CC 789 97 PA #D. | 04/12/2010 | 6,520.27 | 0.00 | 6,520.27 |

## Transaction Details

| GJ No. | Date | Description | Debit | Credit |
|---|---|---|---|---|
| **Trust-Muskegon Facility Caseload** | | | | |
| 37010303 | 03/04/2010 | **AD Admission/Transfer Receipt** | 15.00 | |
| | | 1105 Admission Receipts | 15.00 | |
| | | 2101 Offender Funds | | 15.00 |
| | Narration: | Batch: 1223261, Ref:Pennsylvania | | |
| 37078136 | 03/09/2010 | **PCD Phone Credit Disbursement** | 10.00 | |
| | | 2101 Offender Funds | 10.00 | |
| | | 2596 Phone Credit Payable | | 10.00 |
| | Narration: | Batch: 1225142, Ref:phone credits - | | |
| 37193831 | 03/12/2010 | **AD Admission/Transfer Receipt** | 220.62 | |
| | | 1105 Admission Receipts | 220.62 | |
| | | 2101 Offender Funds | | 220.62 |
| | Narration: | Batch: 1226944, Ref:Pennsylvania | | |
| 37202932 | 03/15/2010 | **CRT Commissary Regular Transaction** | 2.64 | |
| | | 2101 Offender Funds | 2.64 | |
| | | 2501 Payable to Commissary | | 2.64 |
| | Narration: | Rcf030 -Commissary TXN - | | |
| 37222668 | 03/16/2010 | **CRT Commissary Regular Transaction** | 56.78 | |
| | | 2101 Offender Funds | 56.78 | |
| | | 2501 Payable to Commissary | | 56.78 |
| | Narration: | Rcf030 -Commissary TXN - | | |
| 37370912 | 03/29/2010 | **CRT Commissary Regular Transaction** | 6.16 | |
| | | 2101 Offender Funds | 6.16 | |
| | | 2501 Payable to Commissary | | 6.16 |
| | Narration: | Rcf030 -Commissary TXN - | | |
| 37390195 | 03/30/2010 | **CRT Commissary Regular Transaction** | 46.25 | |
| | | 2101 Offender Funds | 46.25 | |
| | | 2501 Payable to Commissary | | 46.25 |
| | Narration: | Rost -Commissary TXN - | | |
| 37480453 | 04/05/2010 | **PCD Phone Credit Disbursement** | 20.00 | |
| | | 2101 Offender Funds | 20.00 | |
| | | 2596 Phone Credit Payable | | 20.00 |
| | Narration: | Batch: 1235344, Ref: - | | |

| | | |
|---|---|---|
| | **Total Receipts:** | **0.00** |
| | **Total Disbursments:** | **141.83** |

## CONCISE MEMORANDUM IN SUPPORT OF HABEAS CORPUS RELIEF

### ISSUE #1:

## Counsel was ineffective for failing to file a motion to suppress defendant's statement.

A statement was taken from the Defendant in violation of his constitutional rights and used at trial. The Defendant had been held 5 days incommunicado prior to his preliminary arraignment and interrogation. T.T. 378. The Defendant requested an attorney prior to giving any statement. T.T. 377-78, 428-29. The Defendant was coerced into giving a statement. The police said, "If you don't help us out were going to send you to state prison today." T.T. 429. The defendant was in the hospital with a life threatening bullet wound when the statement was taken. T.T. 322. The Defendant was on I.V. Morphine at the time of the interview. T.T. 379. The defendant only signed the Miranda waiver after being threatened by the police. T.T. 428-29. The state trooper that took the statement from the Defendant testified on rebuttal and did not contradict the preceding facts. T.T. 477-80.

I pages of trial transcript Attached

pg 1

Because counsel failed to file for suppression of this statement the jury repeatedly heard that the Defendant asked for an attorney prior to and during the police interrogation. T.T. 319, 320, 321, 331, 332, 377, 378, 428, 475, 509, 510, 511. The jury heard 8 separate times that the Defendant refused to answer certain questions. T.T. 328, 329, 348, 349, 476.

The DA exploited the defendant's invocation of his rights and highlighted for the jury a supposed connection between a persons lack of innocence and their failure to speak to authority when he asked the Defendant to acknowledge that he had "tactically made a decision not to answer certain questions." T.T. 476.

Counsel that represented the defendant initially and during the time suppression motions are normally filed had an actual conflict of interest. His firm was actively representing one of the victims in Defendant's case while representing the defendant. He failed to inform the Defendant of this conflict for 4 months and terminated his representation of the defendant when the Defendant discovered this conflict.

The defendant's Miranda rights were ignored by the State Trooper. The Defendant did not get a fair trial because of ineffective counsel and the violations of his rights.

The Defendant's right as set forth under Miranda v. Arizona, 86 S.Ct. 1602 (1966) were not honored.

The state courts decision was contrary to or involved an unreasonable application of clearly established Federal Law as determined by the U.S. Supreme Court. The D.A.'s questioning of the Defendant on his refusal to answer questoin's after receiving Miranda warnings violated the ruling in Doyle v. Ohio, 96 S.Ct. 2240 (1976).

I see attached pages of trial transcript

pg 2

The Defendant's right to effective counsel as set forth in Strickland v. Washington, 104 S.Ct. 2052 (1984) was denied.

The Defendant's right against self incrimination and to terminate questioning was not scrupulously honored as set forth in Michigan v. Mosley, 96 S.Ct. 321 (1975).

The State Courts decision resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. Both courts state that no part of the statement made after the defendant requested an attorney was introduced at trial. The Defendant requested an attorney prior to any statement [T.T. 377-78].[1] The entire statement was repeatedly introduced.

Had the Defendant received his constitutional guarantee of effective assistance of counsel to defend him none of the statement would have been allowed at trial. Had the jury not been allowed to hear that the Defendant requested an attorney and refused to answer question over and over the outcome of the trial would have been different. The jury was allowed to infer the defendant was guilty because he invoked his constitutional guarantee rights all because of ineffective counsel.

Trial Attorney Mackin's claim that he couldn't file for suppression because he got the case late shows he did no investigation of suppression issue.

pg 3

**Appellate counsel "Neltropp" was ineffective in failing to argue that trial counsel "Mackin" was ineffective for eliciting, and failing to object to the prosecutor eliciting, testimony on invocations of Defendant's Miranda rights and for failing to move for jury instructions on the permissible use of such evidence.**

Trial counsel testified at a PCRA hearing that he could not file for suppression because he got the case late and he was time-barred. Counsel testified that he elicited the invocations of Defendant's right at trial to show the statements Defendant made were involuntary. Had counsel done any investigation into suppression he would have discovered he could have filed for suppression under the rules or exceptions. The statement taken from the Defendant in violation of his constitutional rights "was generally self serving and hardly incriminating" according to the trial judge in an opinion dated July 21, 2006. Therefore trial counsel's decision to bring up the invocations of the Defendant's right, in some misguided attempt to show the statements were involuntary was not a reasonable basis designed to effectuate the defendant's interest. Counsel's failure to ask for the proper jury instructions that would first allow the jury to consider the statements involuntary when taken in violation of Miranda and second his failure to request a limiting instruction telling the jury the invocations of the Defendant's rights could not be used to infer guilt or consciousness of guilt, make his decision to introduce the invocations clearly an unsound strategy made with no investigation into the proper instructions necessary for such a decision.

Without the proper instructions the jury was allowed to infer that the defendant was guilty or had a consciousness of guilt for invoking his rights. The Defendant could not benefit because the jury was not told that statements obtained in violation of a Defendant's Miranda rights were involuntary.

When the DA exploited the Defendant's invocations and post-arrest silence to imply guilt by asking the Defendant to acknowledge that he had "tactically made a decision not to answer certain question" [T.T. 476] again trial attorney failed to object or ask for any limiting instruction.

The evidence of and comment on the Defendant's invocation of his rights was not brief and isolated, but was repeated and belabored. There were approximately eighteen testimonial references to the Defendant's Fifth Amendment privilege throughout the testimony. T.T. 319, 320, 321, 328, 330, 331, 332, 347, 348, 377, 378, 428, 475, 476 and approximately 6 more times during closing. T.T. 508, 509, 510, 511.

The repeated testimonial references to the invocations of Defendant's rights was prejudicial to Defendant and prevented the defendant from receiving a fair trial.

Trial Attorney Mackin did not provide the Defendant with effective counsel as guaranteed by the Constitution. Attorney Mackin's decisions were not made after a thorough investigation of relevant law and the facts.

Appeal attorney Nelthropp's decision not to present this issue in post-sentence motions and direct appeal was not made after a thorough investigation of the relevant law and the facts. He erroneously concluded that this invocation issue was moot because suppression had been denied. S.P.T. 10-14, 56. He conceded that Mackin was in error for not asking for a limiting instruction on the use of invocations. S.P.T. 52-55.

If not for the errors and ineffectiveness of trial counsel, and appellate counsel, the Defendant would not have been found guilty of many of the charges.

The decision in State Court was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the U.S. Supreme Court. The State Court's decision that counsel had a reasonable basis for not asking for proper instructions is ridiculous and not supported by any case law. It is contrary to the decision in Strickland v. Washington, supra. Their statement that I benefited from the jury hearing that I repeatedly invoked my rights is contrary to Miranda v. Arizona, supra.

The State Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in a State Court proceeding.

Both opinions provided excuses for trial counsel's actions that were contrary to trial counsel's sworn testimony. Their claim that Defendant benefited from the invocation when there was no jury instruction given that would allow the jury to use the invocations to benefit the Defendant is an unreasonable determination of the facts.

### Defense Counsel was ineffective for failing to investigate having a psychiatric examination performed on defendant.

The police testified they went to the Defendant's house to check on the Defendant's well being. T.T. 8. The police testified at the preliminary hearing and at trail that the defendant was semi-rational and was acting erratic during the incident. T.T. 117. Defense counsel was told by the Defendant that a doctor had interviewed him while hospitalized at York Hospital about his mental state. The defense used at trial was the defendant was trying to commit suicide by cop.

Defense counsel failed to do any investigation into the Defendant's state of mind which was the center of the defense used. Had he done any investigation he would have found the psychiatric consultation report[2] that would have benefited the defense or possibly lead counsel to a different defense.

The report which was done within days of the incident states that the Defendant had thoughts of a variety of methods of committing suicide using indirect reasons such as a motor vehicle accident. The report said the defendant had suicidal thoughts daily for the previous six months. It revealed the Defendant had reported hearing voices intermittently for the prior 6 months. The report said the Defendant may be suffering from psychosis or Bipolar disorder and also stated the defendant had no Homicidal Intent.

2  3 page report attached  Exhibit B

pg 7

Despite the extra-ordinary nature of the incident that gave rise to the charge, defense counsel failed to have the Defendant examined by a psychiatrist or do any investigation into the available report that would have benefited the defendant. Though state of mind was crucial, counsel choose not to investigate or present available evidence about it.

The DA attacked the Defendant's version of events at trial implying recent fabrication. This available report would have rebutted the implication.

When asked about interviewing any witnesses trial counsel confirmed that he thought there was no point in trying to interview or talk to any witness. Pg.. 85 E. H. He didn't need any witnesses for the theory of his case. Instead he relied on the police report and discovery given to him.

Counsel's failure to investigate made him ineffective. Had he obtained the psychology reports prior to trial he may have proceeded differently. His failure to do any investigation into the Defendant's state of mind by interviewing available witnesses make his decisions questionable.

The decision in State Court that having a psychiatric examination would have conflicted with the defense used at trial was contrary to or involved an unreasonable application of clearly established Federal law as determined by the U.S. Supreme Court in Strickland, supra. Defense counsel needed to investigate state of mind, which a psychological evaluation would have done, in order to make an informed decision on which defense to present.

The State Court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

pg 8

Superior Court's claim that having an examine done on the Defendant would have conflicted with the trial testimony fails to recognize that the exam may have led to a different defense because any decision would have been made prior to trial.  Counsel needed the information to make an informed decision.  Clearly evidence that was available in the report already done supported the defense used and or other defenses.

This is clearly a case where counsel failed to conduct any investigation into the defense that was pursued at trial in stark contrast to what was set forth in Strickland, supra.  Counsel's failure has precluded the development of the true facts.

The Defendant asserts his innocence of most charges and it would be a miscarriage of justice to deny habeas relief in this case.

1    Q    What day was that?

2    A    On the 4th.

3    Q    So when you told him his dogs were being taken care

4  of by his wife, that wasn't true?

5    A    There were two dogs there.  We were unaware of the

6  status of the other dog because it took off running.

7    Q    He asked about his dogs, do you want to look at page

8  12 on the transcript?

9    A    I recall that.

10    Q    He asked about his dogs plural?

11    A    Yes.  I didn't know what the status of the one dog

12  was.  I know his wife was taking care of the dogs.  That's all

13  I know.

14    Q    As far as I know, your wife is taking care of the

15  dogs?

16    A    Right, as far as I knew.

17    Q    Would you please go to your Miranda rights form?

18    A    Yes.

19    Q    He has the right to remain silent, is that correct?

20    A    Correct.

21    Q    He has the right to stop questioning at any time?

22    A    Correct.

23    Q    In fact on at least four occasions during this

24  interview, he attempted to invoke his rights, didn't he?

25    A    That could be.  Without me looking.

2  Middle of the page question by Sergeant TH, Sergeant Terry

3  Helwig.  Okay, what type of weapons do you have at the house?

4  RDW is that Ricky D. Whitney?

5       A      That is correct.

6       Q      What does he say?

7       A      I do not wish to answer that.  I'm still, you know,

8  I'm--

9       Q      Turn to page 11 please.  Towards the bottom of the

10  page bottom quarter, RDW, can we discontinue the questioning?

11      A      That is correct.

12      Q      This transcript is 14 pages long, though on page 11

13  he says can we discontinue questioning?

14      A      That's what he asks.

15      Q      That's what he asks.  And he has the right to

16  discontinue the questioning at any time, doesn't he?

17      A      Yes.

18      Q      That goes on for another three pages, right?

19      A      Correct.

20      Q      Page 12, top of the page, second line RDW?

21      A      I would like to have another conversation with you

22  after I speak to an attorney.

23      Q      Was there an attorney in the room at that time?

24      A      No, there was not.

25      Q      Did you give him a phone to call one?

1    A    No, we did not.  There was a phone accessible to

2  him.

3    Q    Was there a phone book or a list of lawyers' names

4  there?

5    A    Not that I know of.

6    Q    That's on page 12 and the transcript goes on for two

7  more pages, correct?

8    A    Correct.

9    Q    He's got a right to have a lawyer, doesn't he?

10   A    That is correct.

11   Q    Go to page 14 please.  Bottom of the -- middle of

12 the page but the next to the last entry of the page, RDW, I

13 wish to discontinue questions until I speak with a lawyer?

14   A    That is correct.

15   Q    Four times that we just pointed out right there he

16 invoked his Miranda warnings that you had just read to him,

17 correct?  Pages four, 11, 12 and 14?

18   A    Yes.

19   Q    He was in the hospital being treated for a bullet

20 wound, correct?

21   A    Correct.

22   Q    Where was he shot?

23   A    In the pelvic bone, in the pelvis area I should say.

24   Q    Do you know when he got out of the hospital?

25   A    When Trooper I believe it was Denisch and Trooper

1    Q    Even if you had the gate closed?

2    A    Yes.

3    Q    Please continue.

4    A    Their car was parked out on the street and they are

5    headed back out to the car and a State Police car pulled up

6    out front across the end of my driveway.

7    Q    Let me ask you some other questions here, Mr.

8    Whitney.  On July 9th, skipping ahead just a bit for a second,

9    did you have a conversation with two State Troopers while you

10   were in the York Hospital?

11   A    Yes, I did.

12   Q    Why were you in the hospital?

13   A    I was in the hospital because Trooper Hall shot me.

14   Q    So you were hit?

15   A    Right.

16   Q    So you were wounded, right?

17   A    Yeah, I was wounded.

18   Q    Where were you wounded?

19   A    He shot me in the lower abdomen with a high powered

20   rifle.

21   Q    And on the 9th you had a conversation with the

22   Troopers?

23   A    On the 9th, two Troopers came in.  I believe they

24   were in uniform, I'm not sure.  They said they wanted to speak

25   to me.  I informed them that I would really like to speak to

1    an attorney first.  They said, well, you know, we'll go

2    through the questions.  If you don't want to answer them, you

3    don't have to.  I said, well, you know, I would really like to

4    speak to an attorney.  They said let's just run these

5    questions by you and see what you know.  At that time it had

6    been four or five days.  I wasn't really even square on what

7    day it was because for several days I was not even -- they had

8    me sedated.  I woke up a couple days later with a tube stuck

9    down my throat and didn't know where I was.

10        Q    Prior to the interview with the Troopers and by the

11   way was Trooper Whitmoyer one of them?

12        A    Yes.

13        Q    Had you had any visitors?

14        A    No.

15        Q    Any medical personnel?

16        A    I was not allowed to use the phone.  I was not

17   allowed to have visitors.  I wasn't allowed to have contact of

18   any type.

19        Q    Had you made a request to speak to a lawyer to

20   anybody?

21        A    I asked to use the telephone and the nurses told me

22   the State Police said I could not use the phone or have any

23   visitors and no one could call and speak to me either.

24        Q    So you had this interview on the 9th, is that

25   correct?

1    A    Yes, it is.

2    Q    What was your physical condition at that time?  How

3    were you feeling?

4    A    I was in a lot of pain.  I couldn't move at all.

5    They had sliced me open from my groin all the way up through

6    to my chest to check out the-- I don't know.  I don't know why

7    they did it.  I was sliced open from the groin up to the

8    chest.

9    Q    Obviously it was related to your treatment?

10    A    Right.  It had shattered the hip when the bullet

11    went through.  I was in a lot of pain.  They had me on liquid

12    morphine and other medication.

13    Q    How were you feeling on the 9th?

14    A    I was, I don't know, I was groggy, I was half there.

15    Q    How was your memory on the 9th?

16    A    Not very good.

17    Q    Go back to the 3rd, if I may?

18    A    Okay.

19    Q    A State Police vehicle pulled up I think is where we

20    left off.

21    A    Right.

22    Q    You told the potential buyers to go?

23    A    Right.

24    Q    I want to show you a picture, Mr. Whitney.  Can you

25    stand with the crutches?

1   2:00 o'clock that day, he was in room 3359.  They say they

2   interviewed him in room 639.  Sloppy.  Sloppy.

3          Why didn't they put the tape on on

4   cross-examination.  We started to find out on at least five

5   occasions Mr. Whitney said I don't want to answer that

6   question.  I want to talk to a lawyer.  I want to speak to a

7   lawyer.  Remember he had been shot on the 4th.  On the 9th

8   he's on liquid morphine.  Hadn't called anybody.  They came

9   into see him.

10          The most important thing of that conversation to the

11  Troopers, ladies and gentlemen, the insistence that started

12  with day one by Mr. Whitney, they asked him why did you shoot

13  at the Troopers.  I didn't see the Troopers.  The man's

14  groggy.  He's had a major operation.  He's on liquid morphine.

15  He hasn't spoken to a lawyer.  He hasn't spoken to anybody and

16  you heard the tape.  He didn't even have to think.  He wasn't

17  making that up.  He said I didn't see them.  From day one he's

18  been saying he didn't see them.  It's not something he

19  fabricated yesterday when he testified.  What about the house.

20  The house?  I didn't set the house on fire.  It must have been

21  an accident.  Same rationale, same scenario.  He's on his own.

22  He is wounded.  He's lonely.  He's frightened.  He's scared.

23  But you heard the tape.  There was no hesitation.  He didn't

24  make it up.  He didn't see the Troopers.

25          He didn't set the house on fire.  In fact Trooper

1   Graham, the fire marshal, he said he couldn't find a natural

2   reason as to why the house caught on fire.  Incendiary.  He

3   said could that be accidental.  Oh yes, it could be

4   accidental.  Arson, and the Judge will instruct you on this,

5   requires the intentional setting of a fire unless the

6   Commonwealth is going to say the intentional setting of the

7   fire was lighting the candle.  Nobody set the house -- setting

8   the lighting of the candle is not setting the house on fire

9   according to the statute.

10          There's another reason, ladies and gentlemen, we

11  submit the Commonwealth didn't want you to hear that tape

12  aside from the innovation of his rights, protected and

13  cherished rights that we talked about earlier today.  You got

14  a chance to hear how groggy he was, how weak his voice was.

15  It wasn't the same voice you heard yesterday.  You also got a

16  chance to see how curt and how sharp Sergeant Helwig's voice

17  was, now come on, Ricky; come on, Ricky.  Sergeant Helwig, the

18  man who was not here.  Subpoenas.  Subpoenas.  Could they have

19  had him here.  Is he on vacation?  Is that the reason?  You

20  heard that.  I want to talk to a lawyer.  He didn't want to

21  answer questions about weapons.  They kept asking him what

22  they were doing but the most important part of that interview

23  was the insistence I didn't see the Troopers.  I was not

24  shooting at them.  He said that on July 9th.  That's there.

25  They can't overcome it.  It's not rebutted.  It's not there in

1   these charges.  He was reckless.  He was reckless for firing

2   his weapons.  He was stupid and he's paying for it.  He'll pay

3   for that the rest of his life.  He didn't fire at the

4   Troopers.  He didn't see the Troopers is what he said on July

5   9th and it's what he said yesterday.

6          Another thing that was unrebutted, ladies and

7   gentlemen, in the confession, he said, Ricky, if he didn't

8   give them what they wanted, they were going to take him from

9   York and ship him to Camp Hill Prison.  Did that happen?

10  Yeah, he went the next day.  Now again go back, go back to the

11  way trials go.  We had the Commonwealth's case in chief.  You

12  had the defense case and then the Commonwealth can rebut if it

13  wants to.

14         Trooper Whitmoyer was there during the interview.

15  They called him back on rebuttal to talk about the photograph

16  that was taken six weeks later at the International Dance

17  School.  They couldn't relate to anything.  He's been here the

18  whole time.  Did they rebut the threat to transfer him back to

19  Camp Hill, if he didn't tell them what they wanted.  No.  That

20  is unrebutted.  Unrebutted.  Abuse.  That's an abuse.  Five

21  times invoking your rights I want a lawyer; I don't want to

22  answer anymore questions.  That's an abuse.  They don't know

23  what room this took place in.  That's sloppy.  They weren't

24  out there looking for their bullets because they made their

25  mind up.  That's sloppy.  Paraffin tests, no.  That's sloppy.

YORK HEALTH SYSTEM
YORK, PENNSYLVANIA 17405
CONSULTATION REPORT

000678634

DR. ___ Nik ___    REQUESTS DR. __ Psych 2304 __    Date & Time Requested: 7/7 @ 1349

REASON FOR CONSULT: ___ BSW many stressors and is depressed ___

Routine consult to be completed within 24 hours of physician notification.
Consultations requiring more immediate attention require personal conversation between requestor and consultant.

**CONFIDENTIAL**

☐ If checked, do not change or initiate therapy.
☒ If checked, do not order testing.
☐ Call me when consult completed.    Phone ___

This information is furnished on the condition that it will be used only for the purpose for which it was requested. Any other use or disclosure of this information requires the express authorization of York Hospital

Date & time consultant notified:
7/7 @ 1349

**REPORT:**

HPI: Pt. was a 39 y/o WM, admitted 7/4/97 after being shot ē a high power Super 30B rifle. The pt. was reportedly involved in a hostage situation — standoff in nature — and was shot by the police in the ® groin. Pt. ___ an opn fx ® iliac wing and ® acetabulum, and 6.8 cm wound. Had ___ since malm - 200. Ethanol - 174.

Pt did not wish to discuss events PTA, but did say that he was drinking too much, has had many stressors ē recent separation + financial problems and was "mad at the world." Says that he never intended to harm anyone, and isn't sure what he did + if he hurt anyone.

Past/S H/x: For the past 6 mos., mood swings ē freq. feeling that "life is not worth living." Has thoughts of suicide almost daily, except when he sees his 3 yr old — but "no intent to act on them." Plans he has thought of — CO poisoning, MVA "and many others." Says he drinks at least a 12 pack/beer daily x 6 mos. Prior to that drank 2 beers/day/everyday for years. No h/x DTS, hallucinations, seizures. Vague h/x of drug use in the "60s." Used crack 1x/wk up until 1 mo ago, "gambling." Quit using because of seeing what negative impact it was having on those around him. No h/x of ___ C.D. Tx. Longest S ___ alcohol use - 3 yrs in the late 80's. DUI - 1980's - now doesn't drink + drive. ___

Current Sx - depressed mood, low energy, tearful, anhedonia ___ sleep, (drinks to sleep at night), freq. suicidal thoughts.

(see page 2)

EXHIBIT B
Page 1

Date & Time Completed: 7/7/97 1550

YORK HEALTH SYSTEM
YORK PENNSYLVANIA
CONSULTATION REQUEST

DR. _____ REQUESTS DR. _____ Date & Time Requested: _____

REASON FOR CONSULT: _____

Routine consult to be completed within 24 hours of physician notification.
Consultations requiring more immediate attention require personal conversation
between requestor and consultant.

☒ If checked, _do not_ change or initiate therapy.

☐ If checked, _do not_ order testing.

☐ Call me when consult completed. Phone _____ Pager # _____

Date & time consultant notified: _____

REPORT:

HPI - No meds PTA. Thinks he has lyme disease (rash, joint pain, low energy)
but hasn't had work-up due to lack of health insurance.

Allergy - Dust.

Current Meds - Pepcid, Reglan, Vit C, MVI, Serax 20mg po q 6hr,
Folate, Thiamine, Ancef,
PRNs - Versed, Narcan (intrused), Tylenol, MSO4 PCA,
PRN e-lyte replacement

Current LABS: Hct - 27.2 ; lytes - Na 134, serum H₂O - 97.4
Alk phos - 41, AST - 117, phosph - 4.7

Family Hx: Pt is one of fifteen children. Several brothers are alcoholics.

Social Hx: Separated x 1 yr. Married x 5 yrs (together 13 yrs). Has a 3 yr
old child and does have visitation. Worked as a traveling mechanic
in VA, but lost his phone x 6 mos and lost customer base. Now
has little money (living on $20/wk). Reportedly had a job to begin
locally next week. No prior legal hx (x DUI). HS grad + 2 yrs college
to be a veterinarian. Air Force x 2½ yrs.

MSE: Pt was interviewed in hosp gown, hosp room, police guard outside.
Pt was in pain during interview, freq. grimacing ā positional changes.
He was hesitant to provide too many details due to circumstances, hx,
however was generally cooperative ā interview. Speech was clear, coherent,
ā directed. Mood depressed. Affect - blunted, tearful when speaking of
family ā neglect. Thought do - denies delusions, hallucinations now but
_____ x 6 mos. SI - denies current SI while

YORK HEAD...
YORK BEHAVIORAL...
CONSULTATION RECORD

DR: _____   REQUESTS DR: _____   Date & Time Requested: _____

REASON FOR CONSULT: _____

Routine consult to be completed within 24 hours of physician notification.
Consultations requiring more immediate attention require personal conversation
between Requestor and consultant.

☒ If checked, do not change or initiate therapy.
☒ If checked, do not order testing.
☒ Call me when consult completed:   Phone _____   Pager # _____

Date & time consultant notified: _____

REPORT:

never ____ — hospitalized. But has SI almost daily PTA. No H I — "never
____ intend to harm anyone." Cognition — O x 3. Attention ____ & ____
____. Memory intact 3/3 immed. recall; 3/3 ST recall; Remote
____ Pres ____ details + recalled 4 past pres. Judgement / Insight ____ feels
____ normal life + regrets actions taken PTA. Abst. ab. lity — good.

Chart reviewed Pt. interviewed.

Imp:   ETOH Dependence ; Hx of Cocaine Abuse — in remission
       R/O   Depression dis
       R/O   Bipolar disorder
       R/O   Psychosis dis
       R/O   ETOH Hallucinosis

Pt could recall many details of events precipitating the
admission the doses cannot ____. Reports many other social stressors.

Recom:  — Cover for detox, as advised
        — ____ ____ continuous observation for now considering most
        ____ of ____ness

        ____ ____ ____ follow a.m.

EXHIBIT B

Page 3

Date & Time Completed ___ — 5:15 pm

## IN THE SUPREME COURT OF PENNSYLVANIA

No. _____

### COMMONWEALTH OF PENNSYLVANIA

#### V.

### RICKY DEAN WHITNEY

### VERIFIED STATEMENT ON IN FORMA PAUPERIS STATUS

Petition for Allowance of Appeal from
Order Entered on December 2, 2008 by
Superior Court of Pennsylvania under
Docket Nos. 1999 MDA 2006 & 2154 MDA 2006
Affirming Orders entered on October 20, 2006 & December 1, 2006 by
Court of Common Pleas of Adams County, Pennsylvania under
Docket No. CP-01-CR-789-1997

Steve Rice, ID No. 85612
Attorney for Appellant

Steve Rice, P.C.
18 Carlisle Street, Suite 215
Gettysburg, PA 17325
717.339.0011

 COPY

## VERIFIED STATEMENT ON IN FORMA PAUPERIS STATUS

Above Defendant, through counsel, Steve Rice, verifies and states as follows:

1.  On November 17, 2006 and December 11, 2006, the Adams County Court of

    Common Pleas granted Whitney's Motions for Leave to Appeal In Forma Pauperis.

    The orders is attached. (There were two appeals that have been consolidated.)

2.  There has been no substantial change in the financial condition of Whitney since

    such date.

3.  Whitney is unable to pay the fees and costs on appeal.

                                    Respectfully submitted,
                                    STEVE RICE, P.C.

Dated: _____3/2/09_____          _____
                                    Steve Rice, ID No. 85612
                                    Attorney for Petitioner
                                    18 Carlisle Street, Suite 215
                                    Gettysburg, PA 17325
                                    717.339.0011

IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY PENNSYLVANIA
CRIMINAL DIVISION

CP-01-CR-789-1997

COMMONWEALTH OF PENNSYLVANIA

v.

RICKY WHITNEY

ORDER

AND NOW, this __7th__ day of __December__, 2006, in consideration of the

attached MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS, the Court orders that:

The Motion is Granted.

BY THE COURT,

/s/ Cesar F. Spicer



S. J.



CK-789-97

 COPY

## IN THE COURT OF COMMON PLEAS OF ADAMS COUNTY PENNSYLVANIA
## CRIMINAL

### CP-01-CR-789-1997

#### COMMONWEALTH OF PENNSYLVANIA

#### V.

#### RICKY WHITNEY

#### ORDER

AND NOW, this 15ᵗʰ day of _Nov._, 2006, in consideration of the

attached MOTION FOR LEAVE TO APPEAL IN FORMA PAUPERIS, the Court orders that:

The motion is granted.

BY THE COURT,

P. J.

Copies Distributed to:

11/20/06

S. Rice, Esq.

AA16

CW

DA

 ORIGINAL

74

Ricky Whitney 354343
Muskegon Correctional Facility
2400 South Sheridan Rd
Muskegon, MI 49442-6298

RECEIVED
SCRANTON

PER _____
DEPUTY CLERK

NO FEE
ENCLOSED

United States District Court
Middle District of PA.
PO Box 1148
235 North Washington Ave.
Scranton, PA 18501